UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

R. MICHAEL CESTARO, :

    *Plaintiff*, :

-against- :

    : **COMPLAINT**

CLARISSA M. RODRIGUEZ, CHAIR, NEW YORK
STATE WORKERS' COMPENSATION BOARD, :
in her individual and official capacity,     Index No.  23-CV-593

    :

DAVID WERTHEIM, FORMER ACTING EXECUTIVE
DIRECTOR AND FORMER GENERAL COUNSEL, :
NEW YORK STATE WORKERS' COMPENSATION
BOARD ,     **A JURY TRIAL IS**
in his individual and official capacity, : **DEMANDED**

HEATHER MACMASTER, ACTING GENERAL :
COUNSEL, NEW YORK STATE WORKERS'
COMPENSATION BOARD, :
in her individual and official capacity,

    :

MADELINE H. PANTZER, FORMER PROJECT
DIRECTOR AND CHIEF OF ADJUDICATION, NEW :
YORK STATE WORKERS' COMPENSATION BOARD,
in her individual and official capacity, :

    *Defendants*. :

------------------------------------------------------------------------x

## PRELIMINARY STATEMENT

1.    Plaintiff brings this action under the U.S. Constitution, the New York State Constitution, and 42 U.S.C. § 1983 to seek relief for the violation of Plaintiff's free speech rights under the First and Fourteenth Amendments to the United States Constitution and Article I, § 8 of the New York State Constitution.

2. Plaintiff communicated his views off-duty, as a private citizen and without identifying his employment status, on issues of significant public interest (Covid-19 mask mandates) with a New Jersey Transit employee aboard a New Jersey Transit Train. As a consequence of this speech, and in punishment for it, Defendants subsequently revoked his civil service promotion from Compensation Claims Referee/Workers Compensation Law Judge to Senior Compensation Claims Referee/Senior Law Judge.

## JURISDICTION

3. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 over this action because it arises under the United States Constitution and because Plaintiff seeks relief under 42 U.S.C. § 1983, a statute providing for the protection of civil rights.

## VENUE

4. Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c).

## JURY TRIAL DEMANDED

5. Plaintiff demands a trial by jury of all issues properly triable thereby.

## PARTIES

6. Plaintiff R. Michael Cestaro is a resident of New York County. He is a New York State classified civil service employee of the New York State Workers' Compensation Board ("WCB"), whose civil service job title is Compensation Claims Referee. At all relevant times herein, in his employment with the WCB, Plaintiff was and remains assigned to a Manhattan hearing part where he adjudicates workers' compensation claims and issues that arise in New York County.

7. The WCB is an agency of the State of New York. Each of the Defendants was and/or is an employee of the WCB at all times relevant herein, and all of the conduct of those Defendants described herein was taken under color of state law.

8. Defendant Clarissa M. Rodriguez is the Chair of the WCB and was so at the time of the events described herein. Upon information and belief, she, along with the co-defendants, were responsible for making the employment decisions described in this complaint.

9. Defendant David Wertheim was the Acting Executive Director and General Counsel of the WCB and was so at the time of the events described herein. Upon information and belief, he, along with the co-defendants, were responsible for making the employment decisions described in this complaint. Defendant Wertheim has since left the agency and is now employed by the New York State Insurance Fund.

10. Defendant Heather MacMaster is the Acting General Counsel of the WCB and was so at the time of the events described herein. Upon information and belief, she, along with the co-defendants, were responsible for making the employment decisions described in this complaint.

11. Defendant Madeline Pantzer was the Project Manager and Chief of Adjudication of the WCB and held that position at the time of the events described herein. Upon information and belief, she, along with the co-defendants, were responsible for making the employment decisions described in this complaint. Defendant Pantzer retired from her position at the WCB in or about December 2021 and has since returned to the agency as a part-time Workers' Compensation Claims Referee.

12. All of the foregoing Defendants are sued in both their official and individual capacities.

**FACTUAL BACKGROUND**

13. The WCB hired Plaintiff in June 2019 as a Compensation Claims Referee/Administrative Law Judge (G-28) to work in the WCB's office in New York, New York.

14. In his job as a Compensation Claims Referee/Administrative Law Judge, Plaintiff conducts formal evidentiary hearings and renders decisions on claims arising under the New York State Workers' Compensation Law, including those claims that involve denial of medical treatment; facilitates settlement negotiations with the parties and attempts to resolve disputed issues; rules on legal objections to medical bills raised by carriers; evaluates whether Orders of the Chair should be issued relative to requests for special medical services; reviews informal administrative determinations and proposed conciliation decisions; reviews electronic file claims for Workers' Compensation benefits, which have been accepted by the carrier but which have various issues in dispute; prepares proposed decisions; and writes reserved decisions on an array of legal issues.

15. Plaintiff's performance reviews were all satisfactory, and he has been described as an exemplary employee.

16. On or about July 15, 2021, the Workers' Compensation Board posted a vacancy for a Senior Compensation Claims Referee (M4) position in the WCB's Manhattan office, consistent with New York Civil Service Law. This position would have been the WCB's Supervising Administrative Law Judge for Manhattan and possibly White Plains.

17. Plaintiff applied and interviewed for the Senior Compensation Claims Referee position, which was a promotional position for Plaintiff.

18. The interview was conducted by defendants Pantzer and MacMaster, and Plaintiff participated in it by video from his home in New York County.

19. On or about August 4, 2021, Pantzer offered Plaintiff the Senior Compensation Claims Referee position, and he accepted it.

20. Plaintiff was scheduled to begin the new promotional position as a Senior Compensation Claims Referee on Thursday, September 2, 2021.

21. On Saturday, August 28, 2021 – the weekend before Plaintiff was to commence his new position – Plaintiff boarded a New Jersey Transit Main Line train from New York Penn Station in Manhattan to Lyndhurst, New Jersey.

22. To reach his final destination, Plaintiff was required to switch trains in Secaucus, New Jersey.

23. Shortly after arriving in Secaucus, Plaintiff boarded a 5:36 p.m. train for a six-minute ride to his final destination, the Kingsland station in Lyndhurst, New Jersey.

24. Upon boarding that train, Plaintiff, who is fully-vaccinated against the Covid-19 virus and was wearing a face mask when required and when medically possible, sequestered himself in a corner as far away as possible from other passengers and nearest the exits for his journey from Secaucus to Lyndhurst.

25. As the result of an ocular disease that causes progressive vision loss, Plaintiff suffers from several visual impairments and conditions. These include the loss of the majority of vision in his right eye, the inability to read with only his right eye without the use of an assisted device and compromised vision in his left eye.

26. During part of the six-minute train ride, Plaintiff kept his mask under his chin because use of the mask significantly impaired the inferior section of his right eye, which was

5

the only area in his entire visual field that provided him with some vision and useful binocularity and depth perception.

27. Plaintiff lowered the mask for the purpose of locating, seeing and accessing the electronic train ticket on his smart phone and communicating via text message with the person awaiting his arrival at his destination, as well in preparation for exiting the train and navigating the dangerous exit between the platform and the gap.

28. Plaintiff's smart phone served (and still serves) as an assistive device for his visual impairment disability because of the various accessibility functions that are on it. During the six-minute train ride, it was necessary for Plaintiff to use these functions.

29. At all relevant times, Plaintiff was in compliance with all applicable laws, rules and regulations during his train ride.

30. About a minute prior to his exit from the train, the conductor approached Plaintiff and requested his ticket.

31. During their interaction, the conductor ordered Plaintiff to pull up his mask, which had been lowered beneath Plaintiff's chin.

32. Plaintiff respectfully refused, stating that it was unconstitutional for the government to compel him to wear a mask.  This proved prescient, as some months later a federal judge in Florida declared the mask mandate on public transportation unconstitutional. Health Freedom Def. Fund, Inc. v. Biden, 599 F. Supp. 3d 1144 (M.D. Fla. 2022).

33. Plaintiff remarked that he would challenge the requirement in court.

34. At this point, the train arrived in Lyndhurst, and Plaintiff exited the train.

35. At no time during this exchange did Plaintiff identify himself as an employee of the WCB or indicate his job title, the name of his employer or make any reference to his employment status.

36. Another passenger traveling on New Jersey Transit, whose identify remains unknown, surreptitiously and without Plaintiff's consent, recorded the interaction between Plaintiff and the conductor.

37. That same day, the video was posted to the public TikTok account of Carly Shapiro, a resident of New York, New York. The length of the posted video was 25 seconds.

38. Upon information and belief, this video was posted to the internet in Manhattan.

39. On or about Monday, August 30, 2021 (two days later), a copy of the video was provided to Plaintiff's employer. The identity of the person who provided the video to Plaintiff's employer remains unknown.

40. That day, Plaintiff's supervisor at WCB, Gila Ivey, informed Plaintiff that the senior management of the agency had seen the video, and she intimated that Plaintiff's promotion might be in jeopardy as a result of it.

41. The next day, Tuesday, August 31, 2021, Defendant Pantzer sent Plaintiff an email revoking his promotion to Senior Compensation Claims Referee, which was scheduled to begin on Thursday, September 2, 2021.

42. Upon information and belief, the decision to revoke Plaintiff's promotion based on his protected speech was made collectively by defendants Rodriguez, Wertheim, MacMaster and Pantzer.

43. The revocation of Plaintiff's promotion was based on Defendants' objection and opposition to the content of Plaintiff's speech and the opinions and viewpoints expressed by him in the video.

44. In June 2022, after Plaintiff's promotion was revoked, a colleague of Plaintiff's at WCB – Marc Grodsky – who has since become the WCB's Downstate Regional Supervising Law Judge, called Plaintiff on an unrelated matter.  During that conversation, Grodsky let slip that, prior to the revocation of Plaintiff's promotion, Grodsky had been contacted by WCB senior management, including upon information and belief Defendants herein, who wanted to discuss with him what Plaintiff had said on the video.

45. At the time that Plaintiff's promotion was revoked (and still), the location where Plaintiff performed his duties for WCB alternated between New York County and Kings County.

46. Various Compensation Claims Referees and other WCB employees have spoken concerning the legality of mask mandates, sometimes in the course of their professional duties. But those who agree with mask mandates or advocate greater expansion of them have not been punished for the content of their speech and their viewpoints.

47. Defendants disagree with Plaintiff's viewpoint about mask mandates, and the purpose of their revocation of Plaintiff's promotion was to punish and discipline Plaintiff for the content of his speech and his opinion.

48. As a consequence of the revocation of his promotion, Plaintiff lost valuable employment benefits, including, but not limited to, an increase in salary and future pension payments.

49. Because of their unlawful revocation of Plaintiff's promotion, Defendants continue to deny Plaintiff various employment benefits to which he is entitled.

## **CLAIM FOR RELIEF**

50.     Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

51.     Defendants revocation of Plaintiff's promotion to Senior Compensation Claims Referee because of his speech violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and is therefore actionable under 42 U.S.C. § 1983.

52.     Defendants revocation of Plaintiff's promotion to Senior Compensation Claims Referee because of his speech also violated Article I, § 8 of the New York State Constitution.

53.     Plaintiff is entitled to injunctive relief against Defendants sued in their official capacities as a consequence of these violations. Specifically, Plaintiff is entitled to: (1) an injunction precluding the official capacity Defendants from continuing to deny to Plaintiff the benefits (including but not limited to leave, seniority, insurance, and pension benefits) that would have accrued to him in his position as Senior Compensation Claims Referee had the position not been unlawfully revoked; (2) an order requiring those Defendants to promote Plaintiff to the position of Senior Compensation Claims Referee or a similar position in duties, salaries and benefits; and (3) an order requiring those Defendants to purge any mention of the video or Plaintiff's exchange with the New Jersey Transit train conductor from his personnel file, and enjoining those Defendants from considering those purged factors in any personnel decision involving Plaintiff in the future.

54.     Plaintiff has incurred damages as a consequence of all Defendants' actions, and is entitled to an award of damages against Defendants in their individual capacities. Plaintiff has

lost pay and monetary benefits as a consequence of the revocation of the Senior Compensation Claims Referee position and has suffered emotional distress.

55.     Additionally, Defendants' viewpoint discrimination is an egregious violation of Plaintiff's federal and state constitutional rights warranting punitive damages.

\*     \*     \*

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a Judgment:

A. Declaring that the revocation Plaintiff's promotion to Senior Compensation Claims Referee and refusal to promote Plaintiff to the position of Senior Compensation Claims Referee violates the First and Fourteenth Amendments to the United States Constitution;

B. Declaring that the revocation Plaintiff's promotion to Senior Compensation Claims Referee and refusal to promote Plaintiff to the position of Senior Compensation Claims Referee violates Article I, § 8 of the New York State Constitution;

C. Enjoining Defendants from continuing to deny to Plaintiff any employment benefits that would have accrued to him had his position as Senior Compensation Claims Referee not been wrongfully revoked;

D. Requiring Defendants to promote Plaintiff to the position of Senior Compensation Claims Referee or a similar position in duties, salary and benefits;

E. Requiring Defendants to purge the video and any discussion or mention related to the video and/or or Plaintiff's exchange with the New Jersey Transit train conductor from Plaintiff's personnel file;

F. Enjoining Defendants from considering Plaintiff's speech in any future personnel decision affecting Plaintiff;

G. Awarding Plaintiff damages in an amount to be determined at trial;

H. Awarding Plaintiff punitive damages in an amount to be determined at trial;

I. Awarding Plaintiff reasonable fees and expenses in accordance with 42 U.S.C. § 1988 and any other appropriate authority; and

11

J.      Granting Plaintiff any other appropriate remedy.

Dated this 23rd day of January, 2023

Ameer Benno, Esq.
BENNO & ASSOCIATES P.C.
30 Wall Street, 8th Floor
New York, NY 10005
Tel.: (212) 227-9300
abenno@BennoLaw.com

*Attorneys for Plaintiff*