```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
R. MICHAEL CESTARO,                       :
                        Plaintiff,        :
                                          :      23cv593 (DLC)
             -v-                          :
                                          :      OPINION AND
CLARISSA M. RODRIGUEZ, et al.,            :          ORDER
                        Defendants.       :
                                          :
                                          :
----------------------------------------- X
```

APPEARANCES:

For plaintiff:
Richard Liam Sullivan
Law Office of Richard L. Sullivan
6558 4th Section Rd. #1400
Brockport, NY 14420

For defendants:
Anjali Bhat
Yuval Rubenstein
NYS Office of the Attorney General
28 Liberty St.
New York, NY 10005

DENISE COTE, District Judge:

The plaintiff, an attorney working for the New York State Workers' Compensation Board ("WCB"), complains that his promotion was improperly revoked for his exercise of his First Amendment rights. For the following reasons, the defendants' motion for summary judgment is granted.

**Background**

The following facts are undisputed unless otherwise noted. Plaintiff Michael Cestaro is a Compensation Claims Referee with the WCB.  In early August of 2021, Cestaro was offered a promotion to a Senior Compensation Claims Referee/Administrative Law Judge position.  The promotion was scheduled to take effect on September 2.

On August 28, Cestaro boarded a New Jersey Transit ("NJT") train to complete a personal errand.  At the time, passengers on NJT were required, with certain exemptions, to wear masks on the train due to the COVID-19 pandemic.  While Cestaro was traveling on that train, a train conductor, who was wearing a mask and appeared to be young African American male, encountered Cestaro with his mask pulled down under his chin.  The conductor told Cestaro that he had to pull up the mask.  Cestaro responded, "I don't have to listen to you," stood up, following the conductor to the train compartment's exit, stating, "fine, I'll challenge it in court" and "it's unconstitutional, the government can't compel me to do this," and, finally, stated to the conductor "if you want to be an obedient dog, you can."  Cestaro exited the train at the next stop.  At no point did Cestaro inform the train conductor of any condition that required Cestaro to pull down his mask.

This interaction was captured on video by an unknown individual, and the video was posted on TikTok on or about August 29.  At the end of the video, a display screen on the train stating "WEAR MASKS WHILE ON BOARD" is visible.

On August 30, at 9:50 a.m., an attorney who regularly represents workers before the WCB, and who had appeared before Cestaro several times, emailed a link to the TikTok video to Madeline Pantzer, then the Chief of Adjudication at WCB.  The attorney stated to Pantzer in the email that he "just thought you should be made aware of this recent video posted of Judge Cestaro."

At 10:01 that day, Pantzer forwarded the attorney's email to WCB's ethics counsel, Cheryl Wood, defendant Heather MacMaster (then Acting General Counsel of WCB), and Pantzer's supervisor, defendant David Wertheim (then Acting Executive Director of WCB).  In the email, Pantzer stated: "I can not believe this is the new Sr. ALJ for Manhattan, it seems to me this is so unprofessional and a poor way to treat workers along with the absolute wors[t] choice on his part.  I[s] there any way to pull the promotion or do I need to wait and see during probation."

At 11:38, Wertheim responded to the email, stating, "MP -- Very very disappointing, and a clear demonstration of both

ignorance and arrogance.  I am chewing on this and will talk to you soon."  Wertheim then emailed and called Paul Connelly, the director of Human Resources at WCB, requesting guidance about how to "pull the promotion" if Pantzer decided that that was the proper course of action.  Connelly emailed Wertheim, stating that Pantzer would need to "send us an email requesting we rescind the job offer, including the reason for rescinding it." Wertheim and Pantzer spoke on the telephone shortly thereafter, and at 2:29, Connelly emailed Wertheim stating that Pantzer "just called me and will be sending me an email requesting we revoke Judge Cestaro's promotion."

At 3:11, Pantzer emailed Connelly.  The email states:

> Michael Cestaro is a Compensation Claims Referee at the Board, he is supposed to be promoted to Senior CCR later this week, on September 2.  He is in a video on the application Ti[k]Tok.  He has told his supervisor that it is him in the video.  This is very disturbing. In it he is not wearing a mask on a NJ transit train. When he is confronted by the conductor, a young man of color, he behaves in an unprofessional and aggressive manner.  The conductor asks him to wear a mask and he refuses and says he will challenge it in court and that it is unconstitutional.  He states you can't compel me to do this and finally states to the conductor that he is behaving like an obedient dog. The conductor never raises his voice and just goes on with his business.  We cannot have a supervisor at the state who behaves in this manner, he cannot be trusted to be fair to the staff or the public, nor does he appear to be capable of following rules and regulations.  I would like to have this pending promotion revoked.  Please advise how we may go about this.

The next morning, Connelly emailed Pantzer.  Connelly stated that "[w]e have reviewed this with Counsel's Office.  It is okay to revoke Michael Cestaro's pending promotion.  Please let us know when he has been notified.  Then, HR will send him official notification."  Pantzer emailed Cestaro at 10:58 a.m. that day informing him that his promotion had been revoked.

At 3:50 p.m. on August 31, Pantzer emailed Wood, MacMaster, and Wertheim, stating "Just as an update: per the approval of HR, Michael Cestaro's promotion to senior CCR has been revoked. I have advised him."  On September 7, MacMaster, who was on vacation between August 27 and September 7, responded to that email, stating, "[t]his is awful," and inquiring about next steps for filling the position.

On January 24, 2023, Cestaro sued Wertheim, Pantzer, MacMaster, and Rodriguez pursuant to 42 U.S.C. § 1983 in their individual and official capacities.  Cestaro's complaint alleges that the revocation of his promotion to Senior Compensation Claims Referee violates his right to free speech under the First and Fourteenth Amendments to the United States Constitution and Article I, § 8 of the New York State Constitution.  The complaint seeks damages, including punitive damages, and injunctive relief, specifically, enjoining defendants from continuing to deny Cestaro any employment benefits that would

have accrued to him had his promotion not been revoked,

requiring defendants to promote Cestaro to the position of

Senior Compensation Claims Referee or a similar position,

requiring defendants to purge the video and any mention of it

from Cestaro's personnel file, and enjoining defendants from

considering Cestaro's speech in any future personnel decision

effecting him.

Defendants each answered separately but filed a joint

motion for summary judgment on December 1, 2023.  Defendants

included a copy of the video in their exhibits in support of the

motion.  Discovery was extended, on consent, to December 15.

The motion was fully submitted on January 26, 2024.

## Discussion

Summary judgment may be granted only when "the movant shows

that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  "To present a genuine issue of material fact

sufficient to defeat a motion for summary judgment, the record

must contain contradictory evidence such that a reasonable jury

could return a verdict for the nonmoving party."  Horror Inc. v.

Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted).

Material facts are facts that "might affect the outcome of the

suit under the governing law."  Choi v. Tower Rsch. Cap. LLC, 2

6

F.4th 10, 16 (2d. Cir 2021) (citation omitted).   In considering

a motion for summary judgment, a court "construe[s] the facts in

the light most favorable to the non-moving party and must

resolve all ambiguities and draw all reasonable inferences

against the movant."  Kee v. City of New York, 12 F.4th 150, 159

(2d Cir. 2021) (citation omitted).

    Although the movant bears the initial burden of showing

that there is no genuine dispute as to a material fact, when

"the burden of proof at trial would fall on the nonmoving party,

the moving party can shift the initial burden by pointing to a

lack of evidence to go to the trier of fact on an essential

element of the nonmovant's claim."  McKinney v. City of

Middletown, 49 F.4th 730, 738 (2d Cir. 2022) (citation omitted).

If the moving party carries its burden, the nonmoving party must

"come forward with evidence that would be sufficient to support

a jury verdict in its favor."  Id. (citation omitted).  Rather

than merely "deny the moving party's allegations in a general

way," the party opposing summary judgment "must present

competent evidence that creates a genuine issue of material

fact."  Id. (citation omitted).  Unsupported allegations do not

create a material issue of fact.  Id.

I.   Eleventh Amendment Immunity

The claims against Pantzer and Wertheim in their official capacities, and those against Rodriguez and MacMaster in their individual capacities, are barred by sovereign immunity.  Any claim for relief under the New York State Constitution is also barred.

A.   Official Capacity Claims

The Eleventh Amendment to the United States Constitution bars federal courts from adjudicating claims against a state, including its agents in their official capacities, absent a state's express waiver or an act by Congress under Section 5 of the Fourteenth Amendment.  74 Pinehurst LLC v. New York, 59 F.4th 557, 570 (2d Cir. 2023).  The only exception exists for claims for prospective relief against state officials in their official capacities.  Id.  It is undisputed that neither Wertheim nor Pantzer can be sued for prospective injunctive relief in their official capacities, given that they no longer work for the WCB and thus have no authority or ability to effect such relief.

B.   Individual Capacity Claims

Personal involvement by a defendant is a prerequisite to liability in a § 1983 action.  Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016).  "[A] defendant in a 1983 action may not be

held liable for damages for constitutional violations merely because [s]he held a high position of authority."  Id.

There is no genuine dispute as to the lack of personal involvement in the decision to revoke plaintiff's promotion on the part of MacMaster or Rodriguez.  Cestaro admits that Rodriguez was not involved.  Although MacMaster was copied on several of the relevant emails, it is undisputed that she was on vacation during the relevant period and did not reply to the email until more than a week after the promotion was revoked. In her deposition, MacMaster denied having any role in the decision.  Cestaro's unsupported speculation to the contrary -- including his contention, without citation, that personal involvement is a "term of art" for present purposes -- does not create a genuine issue of material fact.

C.   State Law Claims

Furthermore, sovereign immunity prohibits federal courts from providing injunctive relief against state officials on the basis of state law.  See Vega v. Semple, 963 F.3d 259, 283 (2d Cir. 2020).  Thus, Cestaro's official-capacity claims based on the New York State Constitution are barred.

II.  First Amendment Retaliation

To establish a prima facie First Amendment retaliation claim, a plaintiff must show (1) that the speech or conduct at

9

issue was protected from the particular retaliatory act alleged;
(2) that the retaliatory act qualifies as an adverse action
taken against the plaintiff, and (3) that there was a causal
connection between the protected speech and the adverse action.
Heim v. Daniel, 81 F.4th 212, 221 (2d Cir. 2023).  But, even if
the plaintiff makes out a prima facie retaliation claim, a
government defendant may still receive summary judgment if it
establishes its entitlement to a relevant defense.  Id.
Defendants have done so here.[1]

     To show causation, a plaintiff must show that the protected
speech was "a substantial motivating factor in the adverse
employment action."  Id. at 222 (citation omitted).  Protected
speech could not substantially cause an adverse action if the
employer would have taken that action "in any event."  Id.
(citation omitted).  Thus, a defendant "can rebut a prima facie
showing of retaliation by demonstrating by a preponderance of
the evidence that it would have taken the same adverse
employment action even in the absence of the protected conduct."
Id. (citation omitted); see also Mt. Healthy v. Doyle, 429 U.S.
274, 285-86 (1977) ("The constitutional principle at stake is

---

[1] The defendants rely on the defenses offered by both Pickering
v. Board of Ed. Of Tp. High School Dist. 205, Will Cnty,
Illinois, 391 U.S. 563 (1968), and Mt. Healthy v. Doyle, 429
U.S. 274, 285-86 (1977).  It is only necessary to address their
arguments under Mt. Healthy.

sufficiently vindicated if such an employee is placed in no

worse a position than if he had not engaged in the conduct.").

This principle, articulated in Mt. Healthy, "ensures that an

employee who makes an unprotected statement is not immunized

from discipline by the fact that this statement is surrounded by

protected statements," and "prevents an employee who engages in

unprotected conduct from escaping discipline for that conduct by

the fact that it was related to protected conduct."  Anemone v.

Metropolitan Transp. Authority, 629 F.3d 97, 115 (citation

omitted).

Here, even assuming, arguendo, that the defendants

improperly considered Cestaro's statement that the NJT's rule

requiring masks was "unconstitutional" in deciding to revoke his

promotion, they have amply demonstrated with undisputed evidence

that they would have revoked it even in the absence of that

statement.  First, Pantzer's initial email to Wertheim,

MacMaster, and Wood makes no mention of the allegedly protected

speech.  It focused instead on Cestaro's "unprofessional"

conduct, noting that it was "a poor way to treat workers."[2]

---

[2] Cestaro's response to the defendants' Rule 56.1 statement notes
that the contents of emails between Connelly and personnel from
the WCB General Counsel's Office on the afternoon of August 30
have been redacted.  The plaintiff did not raise this issue
during discovery and therefore may not do so now.

Pantzer's August 30 email to Connelly, outlining her reasons for wishing to revoke the promotion, does mention the statement but largely focuses on plaintiff's other conduct. Pantzer explains that the video shows Cestaro not wearing a mask on public transit, and that when Cestaro "is confronted by the conductor, a young man of color, he behaves in an unprofessional and aggressive manner."  She further states that "[w]e cannot have a supervisor at the state who behaves in this manner, he cannot be trusted to be fair to the staff or the public, nor does he appear to be capable of following rules and regulations."  Although Pantzer notes, by way of narration, that "[t]he conductor asks him to wear a mask and he refuses and says he will challenge it in court and that it is unconstitutional," the rationale focuses on his failure to wear a mask and his behavior towards the conductor -- including "stat[ing] to the conductor that he is behaving like an obedient dog."

Connelly's emails stated that the issue was that "[w]e have a judge who was filmed giving a transit authority employee a very hard time about wearing a mask on the train" and noted that "[t]he video was posted on tiktok and one of the outside attorneys shared the video" with Pantzer.  Connelly noted in an email to Wertheim that "[o]bviously, at least one person from outside the Board connected him to the Board."

Thus, Wertheim and Pantzer both voiced concerns that Cestaro's conduct, as captured by the video, cast doubt on his ability to treat workers fairly and with respect.  It is undisputed that the role of Senior Compensation Claims Referee requires, <u>inter alia</u>, adjudicating workers' compensation claims, including presiding over cases and conducting hearings if necessary.  Cestaro's inability to treat those appearing before him respectfully, or the appearance of such inability, would be a sufficient reason to revoke the promotion.

Pantzer also expressed concern that Cestaro did not appear able to follow rules and regulations.  It is undisputed that a Senior Compensation Claims Referee must "ensur[e] that hearing and conciliation meetings are conducted in compliance with established professional standards, law, and procedures."

Cestaro has failed to raise a question of fact regarding the defendants' evidence that they would have revoked his promotion even in the absence of any protected speech.  He first contends that he argued with the conductor because he "felt" the conductor was being rude.  Whatever the plaintiff's motivation may have been, the defendants were entitled to make their assessment about the plaintiff's suitability for the Senior Compensation Claims Referee role based on his conduct depicted in the TikTok video and their knowledge of the requirements for

that role.  In any event, no reasonable juror viewing the video would find that the conductor acted either rudely or inappropriately.

Cestaro next argues that his protected speech must have caused the defendants to revoke his promotion because if he had "remained entirely silent and motionless," the promotion would not have been revoked.  This argument does not raise a question of fact.  As the plaintiff admits, he did not remain silent. Instead, he argued with the conductor, and the defendants were entitled to find that the plaintiff's manner in doing so disqualified him from receiving the promotion.

Plaintiff's interactions with the conductor included his use of the expression "obedient dog."  Plaintiff points out that he used the conditional tense when addressing the conductor as an obedient dog, and argues that, even if it was an inappropriate thing to say, it should be considered a metaphor and protected speech.  Cestaro's attempt to excuse his use of this phrase fails.  His interaction with the conductor, including this parting statement by the plaintiff, was disrespectful.  Under Mt. Healthy, evidence of the disruptive impact of potentially protected speech may provide a "further permissible and non-retaliatory" reason to act.  Anemone, 629 F.3d at 120.

14

Finally, Cestaro suggests that he was in fact following the rules because the rules provided for medical exemptions.  He explains that his impaired vision requires him to lower his mask to read and would qualify him for such an exemption.  It is undisputed, however, that he did not mention his impaired vision to the conductor and never requested an exemption from the NJT, the MTA, or the WCB.  Cestaro testified that he wore a mask in WCB offices in compliance with the WCB's requirement and did not ask anyone at WCB to be excused from wearing a mask; he also wore a mask while traveling on the subway in New York and did not ask the MTA that he be excused from wearing a mask.

Thus, the undisputed evidence shows even if the plaintiff had not stated his views about the unconstitutionality of mask mandates, the defendants would have revoked the promotion for his other conduct, namely, behaving unprofessionally, insulting a worker, and failing to follow the rules and regulations about wearing masks on public transit during a global health crisis.  Given the undisputed evidence of Cestaro's behavior, "any reasonable jury would find that [Cestaro's promotion would have been revoked] even absent any desire on the Defendants' part to punish him in retaliation for his allegedly protected speech." Id. at 117.  The defendants are thus entitled to summary judgment on the plaintiff's claims.

15

## Conclusion

Defendants' December 1, 2023 motion for summary judgment is granted.


Dated:     New York, New York
           March 13, 2024

                                    _____
                                       DENISE COTE
                             United States District Judge